**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 23-cr-208 (BAH)** |
| **KIMBERLY DRAGOO and**<br>**STEVEN DRAGOO,** | |
| **Defendants.** | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence defendant Kimberly Dragoo to 21 days of intermittent incarceration as a condition of 36 months of probation and defendant Steven Dragoo to 14 days of intermittent incarceration as a condition of 36 months of probation. The government also requests that this Court sentence each defendant to 60 hours of community service and impose, consistent with the plea agreements, $500 in restitution.

## I.    Introduction

Defendant Kimberly Dragoo, 54, and her husband Steven Dragoo, 66,  both self-employed, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States

1

The Dragoos pleaded guilty to picketing, parading, demonstrating in a Capitol building in violation of 40 U.S.C. § 5104(e)(2)(G). The government's recommendation is supported by: (1) Kimberly Dragoo's complete lack of remorse for her actions and continued celebration of the events of January 6; (2) the Dragoos' manner of entry into the Capitol Building, through a broken window; and (3) the Dragoos' statements on January 6th and to the FBI. Kimberly Dragoo deserves a more serious sentence because she continues to reject responsibility for her actions, going so far as to claim that she is "innocent until proven guilty" *after* pleading guilty to this offense.

The Court must also consider that the Dragoos' conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for their actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances support a sentence of 36 months' probation, with conditions of 21 days of intermittent incarceration for Kimberly Dragoo and 14 days of intermittent incarceration for Steven Dragoo.

## II.     Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF Nos.12 and 13.

*The Dragoos' Role in the January 6, 2021 Attack on the Capitol*

---

Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

The defendants, Kimberly and Steven Dragoo, live in St. Joseph, Missouri. On January 5, 2021, the Dragoos traveled from Kansas City, Missouri to Washington, D.C., via airplane. The purpose of the Dragoos' trip to Washington, D.C., was to protest Congress' certification of the Electoral College.

Prior to January 6, on January 5, 2021, Kimberly Dragoo posted a now-deleted Facebook post, which showed a picture of herself and Steven Dragoo, together on a plane going to Washington, DC. *See* Figure 1; Ex. A. The post stated, "Washington DC Trump Rally #Stop the Steal Here we go." The Dragoos stayed overnight at a hotel near the U.S. Capitol.



*Figure 1*

On the morning of January 6, 2021, the Dragoos attended the "Stop the Steal" rally at the Ellipse. At approximately 1:30 p.m., after a stop at their hotel, the Dragoos went with other protestors toward the grounds of the U.S. Capitol.

While on the grounds of the U.S. Capitol, Kimberly posted videos to her Facebook page of what she saw as she viewed the events from the northwest side of the U.S. Capitol. *See* Exhibits

B-E. In one video, Kimberly stated, "They stormed the Capitol … We got stuck in the crowd for like an hour … I'm not getting back in it again."  In addition, Kimberly stated, "They stormed the Capitol a while ago. I called my sister and my son.  He said that they are not sharing it, but anyway, there were some guys who walked by that got maced.  I think they are getting ready . . . I've seen another crowd go up there – getting ready to do it again." *See* Ex. E.  Throughout the video smoke was visible, as was temporary fencing clearly marked with multiple outward-facing signs containing large lettering that read: "AREA CLOSED." *See* Figures 2 and 3; Ex. E.



*Figure 2: Area Closed Signs as seen in video*          *Figure 3: Area Closed Sign close up*

In another video posted on Kimberly's Facebook account, an unknown individual can be heard saying, "They're going to start the session for . . ."  Kimberly can be heard stating, "That's where they are having the hearing," in a reference to the hearing on counting of the electoral votes. Kimberly further stated, "Hey, they're getting closer up there." She then observed, "This part is

all barricaded," and "These people all went through it.  They're not supposed to be . . . they're not supposed to be up here."

During the video, flash bang grenades can be heard going off in the background as Kimberly asked, "What is that?"  Steven replied, "I think they must just be smoke canisters," as loud emergency vehicle sirens can be heard, police vehicles are seen arriving at the Capitol, and gray smoke is visibly rising from the area.  From a different location within the then-closed grounds of the Capitol, Kimberly also filmed a large contingent of Metropolitan Police Officers from a close distance as the officers arrived in riot gear and walked in a loose formation towards the Capitol Building ignoring taunts and objects thrown from the crowd.

Despite the chaos unfolding in front of them and knowing that they should not be there, the Dragoos made their way across the U.S. Capitol grounds and up onto the terrace outside the Senate Wing door. Around 3:15 p.m., Steven took a picture of Kimberly posing just outside a broken window in the U.S. Capitol. See Figure 4; Ex. A & F.



*Figure 4: KIMBERLY  DRAGOO in Senate Wing Door window.*

5

The Dragoos entered the U.S. Capitol through the broken window, which was near the Senate Wing door of the U.S. Capitol. *See* Figure 5; Ex. G.



*Figure 5*

The Dragoos exited the U.S. Capitol through the Senate Wing Door less than two minutes later at around 3:16 p.m. The Dragoos saw law enforcement officers attempting to barricade the window they just entered and witnessed officers directing rioters out of the building. CCV footage shows the Dragoos re-entered the U.S. Capitol at approximately 3:23:30 p.m. through the Senate Wing Door itself. *See* Figure 6; Ex. H.



*Figure 6*

The Dragoos turned right and walked with a crowd down a corridor where they were confronted by a line of police officers prohibiting people from proceeding further. Only then did they turn back. Steven took several photographs of Kimberly inside the U.S. Capitol.   Shortly thereafter, the Dragoos left the U.S. Capitol through the Senate Wing Door.

After leaving the U.S. Capitol, in a now-deleted Facebook post, Kimberly admitted that she was present in the Capitol on January 6, 2021.  "I went through the Capitol a few hours after it was stormed. What the news is not telling you is that they let everyone go in and walk through. Does this look like they were not letting people in?" Ex. A.

*The Dragoos' Interview*

On January 20, 2021, the Dragoos were interviewed at the FBI's St. Joseph, Missouri office. During that interview both Dragoos admitted to being inside the Capitol and stated that they had not done anything wrong. Steven said that he took photographs of his wife inside the Capitol.

During the interview, Kimberly stated that she attempted to post her video footage and photographs to Facebook on January 6, 2021. Both Dragoos advised they had been following a "Stop the Steal" Facebook page, which provided them with details for their attendance at the

Trump rallies in Washington, D.C. on December 12, 2020 and January 6, 2021. Kimberly admitted to starting a similar "Stop the Steal" Facebook page for Missouri.

Kimberly admitted she entered the U.S. Capitol through a broken window next to an open door near of the U.S. Capitol, where Steven photographed her climbing through. Kimberly thought it was "funny" and stated that she was curious about the broken window.

<em>Kimberly Dragoo's Post January 6th Conduct</em>

Since January 6, 2021, Kimberly has not expressed remorse for her actions, nor—despite pleading guilty to a federal crime—has she accepted responsibility for her actions. Indeed, once Kimberly's federal charges were unsealed and reported on by a local news organization, she re-posted the news alert and commented that "[N]o charges have been filed!!!" *See* Figure 7; Ex. I.



*Figure 7* Kimberly Dragoo's Facebook post from June 22, 2023.

Not only was this factually incorrect, Kimberly already had her initial appearance on the charges in her home jurisdiction two days prior and was scheduled *that day* to be arraigned on those charges in Washington, D.C. [2]

---

[2] For reference, the Dragoos were charged with violations of 18 U.S.C. § 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G) via complaint on June 12, 2023, had their initial appearance

Since pleading guilty on August 11, 2023, Kimberly continues to claim she did nothing wrong, that January 6 was carried out by just a "handful of bad actors," and is a victim of slander and fake news reporting. *See* Ex. J & K. In fact, in a recent public email to her local school board on October 23, 2023, Kimberly commented on her criminal case, stating she is "innocent until proven guilty," and that "there are no facts here." *See* Ex. L.[3] For reference, this email was written over two months *after* Kimberly pleaded guilty in this Court for violating a federal criminal statute.

*The Charges and Plea Agreement*

On June 23, 2023, the United States charged Kimberly Dragoo and Steven Dragoo in a four-count Information with violations of 18 U.S.C. § 1752(a)(1) and (2) and 40 U.S.C. §§ 5104(e)(2)(D) and (G). On August 11, 2023, pursuant to a plea agreement, Kimberly and Steven Dragoo pleaded guilty to Count Four of the Information, charging them with a violation of 40 U.S.C. § 5104(e)(2)(G). By plea agreement, the Dragoos agreed to pay $500 in restitution to the Architect of the Capitol.

**III.    Statutory Penalties**

The Dragoos now face a sentencing for violating 40 U.S.C. § 5104(e)(2)(G). As noted by the plea agreement and the U.S. Probation Office, they face up to six months of imprisonment and a fine of up to $5,000. They must also pay restitution under the terms of their plea agreements. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

---

in Kansas City, Missouri on June 20, 2023, and were arraigned on the charges in Washington, D.C. on June 22, 2023.

[3] The FBI received this email from a member of the school board who was concerned about Kimberly's lack of remorse and denial of guilt. A copy of this email was provided to defense.

As an alternative to a term of straight incarceration, a court may order as a condition of probation that the defendant be incarcerated "during nights, weekends, or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense, during the first year of the term of probation or supervised release." 18 U.S.C. § 3563(b)(1); *see also United States v. Little*, 78 F.4th 453, 461 n.7 (D.C. Cir. 2023) (section 3563(b)(1) "contemplates short periods of confinement like 'nights' and 'weekends' interspersed throughout probation"). The statute was designed to give courts flexibility in the "fashioning of conditions of probation in order to make probation a useful alternative to a term of imprisonment." S. Rep. No. 98-225, at 59 (1983). Because both Dragoos have pleaded guilty to a violation of 40 U.S.C. § 5104(e)(2)(G), a second-degree misdemeanor, the statutory maximum of total confinement the Court may impose under § 3563(b)(10) is six months.

As this Court knows, judges in this district have imposed intermittent confinement as a condition of probation in many January 6 cases. *See, e.g.*, *United States v. Cameron*, 22-cr-17 (TFH), ECF No. 36 (D.D.C. Aug. 17, 2022) (imposing 30 days of confinement in three-day intervals as condition of three years of probation); *United States v. Vuksanaj*, 21-cr-620 (BAH), ECF No. 43 (D.D.C. Apr. 29, 2022) (imposing 42 days of confinement in 14-day intervals as condition of three years of probation). While the statute refers to multiple intervals, a single short interval is also permissible. *See*, *e.g.*, *United States v. Valentin*, 21-cr-702 (JEB), ECF No. 65 (D.D.C. July 17, 2023) (imposing single 10-day interval of confinement as condition of 12 months of probation); *United States v. Escalera*, No. 22-cr-364 (APM), ECF No. 36 (D.D.C. Aug. 8, 2023) (imposing single seven-day interval as condition of two years of probation); *see also* S. Rep. No. 98-225, at 99 (noting that statute was intended to permit a single "brief period of confinement").

In a post-*Little* landscape, where incarceration and probation are still of utmost importance and consideration, intermittent confinement permits the Court to punish, deter, and supervise simultaneously. Notably, this plea occurred one week before the Court's *Little* decision.

## IV.   Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. Here, a sentence of 36 months' probation with a condition of intermittent confinement totaling 21 days for Kimberly Dragoo and 14 days for Steven Dragoo is sufficient, but not greater than necessary, to serve the purposes of sentencing under 18 U.S.C. § 3553(a)(2).

### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing the Dragoos' participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating] factors. Notably, for misdemeanor defendants like Dragoos, the absence of violent or destructive acts is not a mitigating factor. Had the Dragoos engaged in such conduct, they would have faced additional criminal charges.

One of the most important factors in Kimberly Dragoo's case is her lack of remorse. As stated above, Kimberly's repeatedly denied wrongdoing on January 6, even *after* appearing in this Court and pleading guilty to a federal crime and signing the Statement of Offense. *See* ECF 12.

In addition to her actions *after* January 6, there's her conduct *on* January 6, which included an acknowledgement—on video—that the rioters storming the Capitol "shouldn't be up there," an expressed desire not to "go back in" to the riotous crowd. Despite this, she entered the Capitol twice through the Senate Wing Door hallway—once through a broken window and another through the Senate Wing Door itself *after* the Dragoos had been forced out of the Building by police.

Steven Dragoo has similar, albeit less extreme, factors that support a need for incarceration. Kimberly is heard on Steven's video, observing the same scene and making the same choice to enter the Capitol. Indeed, video recovered from Steven's Facebook shows him witness a violent altercation between rioters and police. Steven also photographed Kimberly's entrance through a broken window and similarly entered the Capitol Building twice, ignoring the loud alarms, violence, and police presence.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration.

### B.  The Dragoos' History and Characteristics

Neither Kimberly nor Steven Dragoo have a prior criminal conviction or arrest record.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on

our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The Dragoos' conduct on January 6 and Kimberly Dragoo's conduct after January 6 evince a complete lack of respect for not only the rule of law, but also the judicial system. The Dragoos trespassed on Capitol Grounds and entered the Capitol Building knowing that they were not supposed to be there. First, Kimberly's own video captures her making the comment that other rioters are "not supposed to go up there," in reference to the Capitol Building; second, despite that

awareness, the Dragoos entered through a *broken* window; and third, despite witnessing the state of the Senate Wing Door area—including initially heeding commands from police to exit—the Dragoos reenter the Building. Further, Kimberly's conduct following January 6 demonstrates she has no remorse for her actions that day and no respect for this Court's authority, shown by her continued defiance and unwillingness to even acknowledge the charges filed against her.

The Court must sentence the Dragoos in a manner sufficient to deter them specifically, and others generally, from going down that road again.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[4] This Court must sentence the Dragoos based on their own conduct and relevant characteristics, but should give substantial weight to the context of their unlawful conduct: their participation in the January 6 riot.

The Dragoos pleaded guilty to Count Four of the Information, charging them with picketing, parading, demonstrating, in violation of 40 U.S.C. § 5104(e)(2)(G). This offense is a Class B misdemeanor. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid

---

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In *United States v. Modrell*, 23-cr-001 (BAH), the defendant entered the Capitol through a smashed-out broken window shortly after the initial breach of the Capitol building, spent an extended period of time inside the Capitol, witnessed close proximity to violence against police in the Capitol, and traveled through multiple areas inside the Capitol. After his actions on January 6, the defendant substantially minimized the violence he encountered on January 6 when interviewed by FBI agents and failed to express remorse for his unlawful conduct on January 6. This Court sentenced Modrell to 36 months' probation with 90 days home confinement as a condition, a $1,500 fine, and $500 in restitution.

In *United States v. Brian McGee*, 23-cr-096 (RDM), the defendant was inside the Capitol for a brief time but posted many incendiary statements after the fact advocating for political violence and stated he "wouldn't hesitate doing it again," but next time he would come "locked and loaded." In statements to the FBI, McGee minimized the warning signs he saw prior to entering the Capitol Building and blamed police for letting rioters in. The Court sentenced McGee to 36 months' probation, 7 days of intermittent incarceration, 60 hours of community service, and $500 in restitution.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.     Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[5] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering

---

[5] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that the Dragoos must pay $500 in restitution, which reflects in part the role the Dragoos played in the riot on January 6.[6] Plea Agreement at ¶ 13. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) The Dragoos' restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 76.

## VI.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Kimberly Dragoo to 21 days' intermittent confinement and Steven Dragoo to 14 days' intermittent confinement, each as a condition of 36 months' probation, and 60 hours of community service. The government also requests that this Court impose, consistent with the plea agreement in this case, $500 in restitution. Such a sentence protects the community, promotes respect for the law, and deters future crime by

---

[6] Unlike under the Sentencing Guidelines for which the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

imposing restrictions on the Dragoos' liberty as a consequence of their behavior, while recognizing

their acceptance of responsibility for their crime.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    */s/ Kyle M. McWaters*
Kyle M. McWaters
Assistant United States Attorney
D.C. Bar No. 241625
601 D Street NW
Washington, DC 20003
(202) 252-6983
kyle.mcwaters@usdoj.gov